UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

DERRICK GEORGE,

                       Plaintiff,

           v.

NATIONSTAR MORTGAGE, LLC and
DAVIDSON FINK LLP,

                     Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
16-CV-261 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Derrick George, proceeding *pro se*, commenced the above-captioned action against Defendants Nationstar Mortgage LLC ("Nationstar") and Davidson Fink LLP, alleging that Defendants violated the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), when Nationstar was assigned Plaintiff's mortgage and when Defendants failed to validate his mortgage debt in connection with a foreclosure proceeding in state court. (Compl., Docket Entry No. 1.) Plaintiff seeks damages as well as a declaratory judgment that Defendants' conduct violated the FDCPA and "judgment from the court that [Defendants] cease[] any further debt collection activity." (*Id.* at 6.) Defendants move to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Nationstar Mem. in Supp. of Mot. to Dismiss ("Nationstar Mem."), Docket Entry No. 18-5; Davidson Fink Mem. in Supp. of Mot. to Dismiss ("Davidson Fink Mem."), Docket Entry No. 22-1.) For the reasons set forth below, the Court grants Defendants' motions.

## I.  Background

For the purposes of this Memorandum and Order, the Court assumes the truth of the facts

alleged in the Complaint.  On April 10, 2008, Plaintiff executed a note in the amount of

$328,961 with Golden First Mortgage Corporation and, on the same day, secured the note with

property located at 4413 Clarendon Road in Brooklyn, New York (the "Property").  (Compl. ¶ 8;

Defs. State Court Record ("State Court R.") 36–49, Docket Entry No. 18-4.)[1]  The mortgage by

which Plaintiff secured the note (the "Mortgage") was recorded on May 7, 2008.  (State Court R.

39.)

On July 8, 2013, Mortgage Electronic Registration Systems ("MERS"), as nominee for

Golden First, assigned the Mortgage to Nationstar.  (*See* Assignment of Mortgage, annexed to

Compl. as Ex. A.)  Nationstar recorded the Assignment of Mortgage with the New York City

Register's Office on July 25, 2013.  (State Court R. 51.)  On October 15, 2013, Nationstar,

through Davidson Fink as foreclosure counsel, initiated a "debt collection action masquerading

---

[1]  Because the Court is assessing whether it has subject matter jurisdiction, it may rely on documents outside the Complaint.  *See M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013). In addition, a court may take judicial notice of state court decisions in considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 167 (2d Cir. 2012) ("We may 'take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.'" (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that, in deciding a motion to dismiss for failure to state a claim, the court "may also look to public records, including complaints filed in state court"); *see also MacKinnon v. City of New York / Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014) (affirming a district court's decision to dismiss a complaint based on preclusion where the district court relied on documents from a state court action); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 (S.D.N.Y. 2016) (dismissing a federal complaint on a motion to dismiss finding preclusion based on a state court judgment); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (same).
Because the State Court Record is not consecutively paginated and contains exhibits within the exhibits submitted to the Court, the Court refers to the electronic document filing system (ECF) pagination.

as a 'foreclosure' action" in the Supreme Court of New York, Kings County, stating that Plaintiff defaulted on the Mortgage as of April 1, 2013. (Compl. ¶¶ 9, 14; State Court R. 2–11.)

On November 4, 2013, Plaintiff answered the foreclosure complaint, challenging Nationstar's standing to foreclose on the Property and the amount of the loan secured by the Property. (State Court R. 25–27.) Nationstar moved for summary judgment and, on April 20, 2015, the state court judge granted Nationstar's motion and appointed a referee to ascertain the amount due to Nationstar on the Mortgage. (*Id.* at 47–74.) Plaintiff alleges that on September 1, 2015, he "served/dispatched" a Notice of Dispute pursuant to section 1692(g)(a)(1)(2) of the FDCPA, requiring Defendants to obtain verification and to "validate the alleged debt from the creditor." (*Id.* ¶ 15; Notice of Dispute, annexed to Compl. as Ex. C.) Plaintiff did not receive verification of the debt, and the "debt collection" continued unabated. (*Id.* ¶ 16.) On January 13, 2016, Nationstar moved for a judgment of foreclosure and sale, which the state court granted on May 20, 2016 and entered on June 16, 2016. (*Id.* at 74–88.)

Plaintiff alleges that Defendants "engaged in abusive behavior" and "trespass[ed] in [his] private commercial affairs"; failed to provide the requisite disclosure upon "initial communication," as required under 15 U.S.C. § 1692e(11), when they were assigned the Mortgage in July of 2013; and continued to "collect the alleged debt without ceasing their collection actions" despite Plaintiff's request for proper verification and validation under 15 U.S.C. § 1692g(b). (*Id.* ¶¶ 18, 27, 29.)

## II. Discussion

### a. Standards of review

#### i. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)); *see also Chau v. S.E.C.*, 665 F. App'x 67, 70 (2d Cir. 2016). The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "'[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

#### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assoc's, L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time*

*Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)); *see Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must liberally construe papers submitted by *pro se* litigants "to make the strongest arguments they suggest"); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### iii. Documents considered

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Wilson v. Kellogg Co.*, 628 F. App'x 59, 60 (2d Cir. 2016) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945

F.2d 40, 44 (2d Cir. 1991)). In addition, courts may consider "documents that, although not incorporated by reference, are integral to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). A court need not consider other information outside the pleadings, but where a court does not exclude extraneous information, it must give notice to the parties and convert the motion to one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d); *see also Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014) (noting that before converting a motion to dismiss into a motion for summary judgment, the court should "give sufficient notice to an opposing party and an opportunity for that party to respond"); *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202–03 (2d Cir. 2013) ("[T]he conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforce[d] and mandatory.").

### b. The *Rooker–Feldman* doctrine does not deprive the Court of jurisdiction

Defendants move to dismiss the Complaint for lack of jurisdiction under the *Rooker–Feldman* doctrine, arguing that Plaintiff is asking the Court to review and reject the state court summary judgment decision and entry of foreclosure. (Nationstar Mem. 12; Davidson Fink Mem. 1 (incorporating arguments).) Plaintiff argues in opposition that he is not "conflating" his "proper consumer protection case under federal law" with the foreclosure. (Pl. Opp'n to Davidson Fink Mot. to Dismiss ("Pl. Opp'n to Davidson Fink") 1, Docket Entry No. 23.)

In *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 415–16 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983), the Supreme Court held that federal district courts lack subject matter jurisdiction over disputes where a plaintiff

essentially seeks review of a state-court decision. *Feldman*, 460 U.S. at 482 ("[A] United States District Court has no authority to review final judgments of a state court in judicial proceedings."); *Rooker*, 263 U.S. at 416 (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005) (holding that *Rooker–Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) ("Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." (citing *Exxon Mobil Corp.*, 544 U.S. at 284)); *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) ("[T]he *Rooker–Feldman* doctrine deprives a federal court of jurisdiction to consider a plaintiff's claim," which applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." (citations and internal quotation marks omitted)). "Underlying the *Rooker–Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *accord Vossbrinck*, 773 F.3d at 426 ("The doctrine is rooted in the principle that appellate jurisdiction to reverse or modify a state-court judgment is lodged exclusively in the Supreme Court." (alteration, citation and internal quotation marks omitted)).

In order for the *Rooker–Feldman* doctrine to apply, the following four-part test must be satisfied: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries

caused by a state[-]court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck*, 773 F.3d at 426 (alterations and internal quotation marks omitted) (quoting *Hoblock*, 422 F.3d at 85); *see also McKithen*, 626 F.3d at 154 (outlining the *Rooker–Feldman* test).

Here, applying the four-part test, *Rooker–Feldman* does not deprive the Court of jurisdiction over the action because Plaintiff commenced the instant action before the state court entered a final judgment of foreclosure and sale. Plaintiff filed the Complaint on January 19, 2016, several months before the state court entered a judgment of foreclosure and sale on May 20, 2016. (*See* Compl.; State Court R. 78.) Moreover, the Court is not aware of any precedent, and Defendants do not cite any, that applies *Rooker–Feldman* where a summary judgment decision was entered in the underlying state action but judgment was not yet entered. *See Vossbrinck*, 773 F.3d at 426 (holding that application of the *Rooker–Feldman* doctrine requires, *inter alia*, that "the state judgement was rendered before the district court proceedings commenced"); *Buoni v. Citibank N.A.*, No. 15-CV-1156, 2016 WL 6106465, at *2 (N.D.N.Y. Oct. 19, 2016) (finding that when "a defendant in foreclosure action defaults, but commences a federal action before final judgment is entered[,] . . . the *Rooker–Feldman* doctrine does not apply because final judgment was not entered in state court before the commencement of [the federal] action").

In addition, the Second Circuit recently clarified the scope of the *Rooker–Feldman* doctrine in the context of a prior foreclosure proceeding in *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014). In that case, a state court had granted foreclosure of a plaintiff's property in a prior state proceeding and the plaintiff initiated a federal suit shortly thereafter, alleging violations of numerous state and federal laws in connection with

the servicing of his mortgage. *Vossbrinck*, 773 F.3d at 425. In the plaintiff's request for relief, he sought "title to his property, immediate tender of the property, declaratory relief, and punitive damages" and asked the court to void the foreclosure judgment. *Id.* at 426. The Second Circuit nevertheless acknowledged that the plaintiff was *pro se*, and the complaint could be liberally construed to assert claims of fraud that were not barred under *Rooker–Feldman* because they sought damages for injuries the plaintiff suffered as a result of the alleged fraud in connection with the foreclosure proceedings.[2] *Id.* at 427. The Second Circuit reasoned that the adjudication of such claims did "not require the federal court to sit in review of the state court judgment." *Id.* at 427, 428 n.2 (discussing similar holdings from other circuit courts).

In light of this precedent, and in light of Plaintiff's statement in his opposition papers, that although "[D]efendant[s'] non-answer focuses on foreclosure," Plaintiff "can prosecute his claims by not conflating the [foreclosure and FDCPA] actions," (Pl. Opp'n to Davidson Fink 1), and the Court therefore construes the Complaint to assert claims that are not barred by the *Rooker–Feldman* doctrine. Although, as Defendants note, Plaintiff seeks "judgment from the [C]ourt that [Defendants] cease any further debt collection activity" — presumably referring to the then-pending foreclosure proceeding in state court — the gravamen of Plaintiff's claim is that Defendants failed to provide him with the required notices and debt validation under the FDCPA. Therefore, his claims do not "invite[] review and rejection of [the state court]

_____

[2] The Court held that, "[t]o the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker–Feldman* bars Vossbrinck's claim." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014). However, the Court went on to note that "[t]o the extent Vossbrinck's *pro se* complaint can be liberally construed as asserting fraud claims that are not barred by *Rooker–Feldman* — because they seek damages from Defendants for injuries Vossbrinck suffered from their alleged fraud — we nonetheless affirm dismissal of those claims [because Vossbrinck waived appeal]." *Id.* at 427–28.

judgment," and no final judgment "was rendered before the district court proceedings commenced." *See Vossbrinck*, 773 F.3d at 426.

Accordingly, the *Rooker–Feldman* doctrine does not deprive the Court of jurisdiction over this action.

### c. Plaintiff's FDCPA claim is not precluded

Defendants argue that Plaintiff's FDCPA claim is both issue-precluded and claim-precluded because Plaintiff did challenge the issue of the foreclosure in the foreclosure action and could have litigated his FDCPA claim in the state court foreclosure action. (Nationstar Mem. 16; Davidson Fink Mem. 1 (adopting arguments).)

"The federal courts generally have . . . consistently accorded preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). State court judgments may preclude a federal action under two related but distinct doctrines. *Proctor v. LeClaire*, 715 F.3d 401, 411 (2d Cir. 2013). "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in th[e] [previous] action . . . ." *Id.* (alteration and internal quotation marks omitted) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996). "Issue preclusion, or collateral estoppel, [] applies not to claims or to causes of action as a whole but to issues." *Id.* at 414 (citing *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996). A court can take judicial notice of state court decisions on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 167 (2d Cir. 2012) ("We may 'take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.'" (alteration in original) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006));

*see also Worthy-Pugh v. Deutsche Bank Nat'l Trust Co.*, 664 F. App'x 20, 22 (2d Cir. 2016)

(affirming a district court's decision granting a defendant's motion to dismiss where the district

court found that Plaintiff's action was precluded by a prior state court foreclosure action);

*Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 (S.D.N.Y. 2016)

(dismissing federal complaint on a motion to dismiss where preclusion was found based on a

state court judgment of foreclosure and sale); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171

(E.D.N.Y. 2010) (same) *aff'd*, 446 F. App'x 360, 361 (2d Cir. 2011).

"Congress has specifically required all federal courts to give preclusive effect to state-

court judgments whenever the courts of the [s]tate from which the judgments emerged would do

so. . . ." *Allen*, 449 U.S. at 96; *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162,

191 (2d Cir. 2012) ("[I]n order to determine the preclusive effect of a state-court decision, a

federal court must look to the law of that state and should not give the state-court decision any

greater preclusive effect than the courts of that state would give it . . . .").  Thus, the Court must

apply New York law to determine whether Plaintiff's claim is barred by the doctrine of claim

preclusion.[3]  New York law dictates that in deciding whether a claim is one that was or could

have been raised in a prior action, the question is whether the claim "aris[es] out of the same

transaction or series of transactions" involved in the prior action.  *Hameed v. Aldana*, 296 F.

---

[3]  Because Plaintiff's FDCPA claim was not "actually litigated" in the state court foreclosure proceeding, it cannot now be issue precluded.  *See, e.g.*, *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 92 (2d Cir. 2012) ("Even assuming [the plaintiff's] motion . . . in the state court complained of all the same misconduct as alleged in its federal complaint — which it did not . . . [the state court motion] requires a substantially different analysis than determining whether [the defendant] violated the FDCPA . . . ."); *see also Glob. Gold Mining, LLC v. Ayvazian*, 612 F. App'x 11, 15 (2d Cir. 2015) (holding that a defendant's "argument that [a] [d]efault [j]udgment had preclusive effect [was] meritless[,] because [i]ssue preclusion applies only where the issue was 'actually litigated' in the prior proceedings") (quoting *Wyly v. Weiss*, 97 F.3d 131, 141 (2d Cir. 2012)).

App'x 154, 155 (2d Cir. 2008) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)); *see also Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (explaining that New York's approach provides that a later claim could have been raised in a prior action if it "aris[es] out of the same factual grouping as [the] earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief").

A defendant moving to dismiss an action on the basis of claim preclusion must show "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alterations and citation omitted); *see also Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) ("Under both New York law and federal law, the doctrine of . . . claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" (alteration and citation omitted)).

Here, the elements of claim preclusion are not satisfied. First, the state court entered summary judgment in Defendants' favor, which was an adjudication on the merits of Defendants' foreclosure claim and the arguments Plaintiff asserted in his answer to the claim.[4]

---

[4] For purposes of claim preclusion, unlike the *Rooker–Feldman* analysis, it makes no difference that the state court did not enter the final entry of foreclosure in the underlying litigation prior to Plaintiff filing suit in federal court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (explaining that *Rooker–Feldman* does not deprive a federal court of jurisdiction over a claim where the state court has adjudicated an underlying issue, but issue and claim preclusion may then preclude relief in the federal forum); *Saferstein v. Lawyers' Fund for Client Protection*, 142 F. App'x 494, 496 (2d Cir. 2005) (recognizing that *Exxon Mobil* "greatly curtailed the reach of the *Rooker–Feldman* doctrine," which, as applied by the circuit courts until that point, was improperly "superseding the ordinary application of preclusion law").

(*See* State Court R. 70 (granting "summary judgment in favor of [Nationstar] as against . . .

Derrick George . . . as to the [foreclosure] claim described in [Nationstar's] complaint herein"));

s*ee also Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *5 (E.D.N.Y. Mar.

11, 2016) (holding that a state court's summary judgment order in favor of the foreclosure

plaintiff "operate[d] as a final adjudication on the merits for *res judicata* purposes");

*Swiatkowski*, 745 F. Supp. 2d at 171 (noting that an "earlier state court action, which include[s]

a Final Judgment of Foreclosure and Sale, [i]s a previous adjudication on the merits" in

satisfaction of the first *res judicata* requirement); *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d

413, 421 (S.D.N.Y. 2008) ("It is long settled in this [c]ourt and in New York State courts that a

summary judgment dismissal is considered a decision on the merits for *res judicata* purposes.").

Second, both actions involve Nationstar and Plaintiff, "the same adverse parties," but it is

less clear whether Davidson Fink was in "in privity" with Nationstar during the foreclosure

action. *See Marcel*, 779 F.3d at 108. The privity inquiry turns on "whether, under the

circumstances, the interests of [the defendant] were adequately represented in [the earlier

action]." *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328 (S.D.N.Y. 2008) (quoting

*Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)). New York law

provides that privity extends to parties "who are successors to a property interest, those who

control an action although not formal parties to it, those whose interests are represented by a

party to the actions, and possibly coparties to a prior action." *Yeiser*, 535 F. Supp. 2d at 423

(quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270 (1970)); *see also Fequiere*, 2016 WL

1057000, at *6 (finding that the defendants, who were not named in a state court foreclosure

action, were in privity with the state-court plaintiff because of their alleged interests in the

---

federal plaintiff's/state-court defendant's mortgage); *Graham*, 156 F. Supp. 3d at 509 (same); *Swiatkowski*, 745 F. Supp. 2d at 171 & n.11 (same). Davidson Fink was not a "party" to the foreclosure action; Davidson Fink was Nationstar's counsel. (*See* State Court R. 2.) Although other considerations may suggest that Davidson Fink was nevertheless in privity with Nationstar in the underlying foreclosure action, the Court declines to decide that issue because Plaintiff's FDCPA claim was not raised, and need not have been raised, in the foreclosure action.

Courts in this Circuit have found that a plaintiff's federal-court claim is precluded by a state-court judgment in a foreclosure action when the plaintiff has alleged, in federal court, that the defendants acted improperly in connection with the making, validity or enforcement of the underlying mortgage. *See, e.g.*, *Tanasi v. CitiMortgage, Inc.*, --- F. Supp. 3d ---, ---, 2017 WL 2837477, at *15 (D. Conn. June 30, 2017) (finding that plaintiffs' claims relating to the execution of the note, mortgage, and subsequent default were claim-precluded, but plaintiffs' claims that the defendant-mortgagee misled consumers about its policies, was negligent in its management of the mortgage and failed to comply with RESPA's notice requirements were not precluded); *Fequiere*, 2016 WL 1057000, at *7 (holding that where the plaintiff attacked the validity of the underlying mortgage and the propriety of the foreclosure action in state court, she could not recast the same factual allegations to support claims under racketeering and state statutes in federal court); *Graham*, 156 F. Supp. 3d at 506 (precluding the plaintiff-mortgagor's claims against a bank for violations of securities laws and debt collection laws because those causes of action were predicated on the claim that the bank lacked standing to pursue foreclosure action against the plaintiff-mortgagor, and the state court had litigated the issue of standing in the prior action); *Solomon v. Ocwen Loan Servicing, LLC*, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the

14

origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); *Hinds v. Option One Mortg. Corp.*, No. 11-CV-6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 12, 2012) ("Inasmuch as [p]laintiff's fraud claim is premised on his allegations that [d]efendants obtained the *underlying mortgage* through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim . . . [since the plaintiff's claims] arise from the same factual grouping — namely . . . the right of [the] [d]efendants to enforce that agreement in a state court foreclosure proceeding."); *Swiatkowski*, 745 F. Supp. 2d at 172 ("In particular, any claims that plaintiff brings relating to whether defendants issued a declaration of default or order of foreclosure against [her] erroneously could have been raised by plaintiff in the state court action."); *Singh v. Parnes*, 199 F. Supp. 2d 152, 159 (S.D.N.Y. 2002) ("Under these principles, a party cannot avoid the preclusive effect of *res judicata* or collateral estoppel by recasting allegations of fraud adjudicated in the prior litigation as a federal RICO action."); *see also Yeiser*, 535 F. Supp. 2d at 421 ("According to New York law . . . *res judicata* . . . applies to defenses that could have been litigated, including defenses to a foreclosure.")

Plaintiff alleges that by filing a foreclosure action, Defendants "engaged in abusive behavior" and "trespass[ed] in [his] private commercial affairs"; failed to provide the requisite disclosure upon "initial communication," as required under 15 U.S.C. § 1692e(11), when they recorded the assigned Mortgage in July of 2013; and continued to "collect the alleged debt without ceasing their collection actions" despite Plaintiff's request for proper verification and validation under 15 U.S.C. § 1692g(b). (Compl. ¶¶ 18, 27, 29.) These allegations do not actually stem from the execution of the note or Mortgage and the subsequent default — that is,

unlike Plaintiff's assertions in his answer to the foreclosure complaint, that he did not "agree with the amount of money claimed as owed" and that Nationstar lacked standing to pursue the foreclosure action, (State Court R. 25), the allegations of Plaintiff's FDCPA claim do not "aris[e] out of the same transaction or series of transactions" that gave rise to the foreclosure action, *see Hameed*, 296 F. App'x at 155. Nor does Plaintiff's FDCPA claim "aris[e] out of the same factual grouping" as the foreclosure claim, which was based on Plaintiff's failure to pay the loan secured by his Mortgage. *See Burgos*, 14 F.3d at 790. Instead, the factual allegations supporting Plaintiff's claim arise from Defendants' conduct leading up to and during the foreclosure action, which conduct Plaintiff alleges constitutes separate violations under the FDCPA. Because Plaintiff's FDCPA claim does not relate to Defendants' conduct in executing or servicing the mortgage and, as the Court construes it, does not "directly implicate[]" the eventual foreclosure judgment, *see Tanasi*, --- F. Supp. at ---, 2017 WL 2837477, at *17, it is not precluded.

### d. Plaintiff fails to state a claim under the FDCPA

Nationstar argues that it is not a debt collector and that, in any event, Plaintiff fails to allege sufficient facts to state an FDCPA claim against Nationstar. (Nationstar Mem. 21.) Davidson Fink argues that Plaintiff has not alleged that Davidson Fink contacted him in any way except to serve papers during the foreclosure action, and reiterates Nationstar's more exhaustive argument that a foreclosure action in equity does not constitute a "debt collection" under the FDCPA.[5] (Davidson Fink Mem. 6–7; Nationstar Mem. 9–12 (arguing that Plaintiff "fails to

---

[5] Defendants ask the Court to hold, as a matter of law, that foreclosure actions in equity — which do not seek any monetary judgment or collection of the underlying debt — are not "debt collections" under the FDCPA. (*See* Nationstar Mem. 9–12; Davidson Fink Mem. 6–7.) The Court declines to reach this issue, which is unsettled in this Circuit, because even assuming that foreclosure actions in equity are not subject to the protections of the FDCPA, Plaintiff has failed to state a claim. *See Carlin v. Davidson Fink LLP*, 852 F.3d 207, 213 n.1 (2d Cir. 2017)

allege any debt collection on the part of Nationstar that would be actionable under the FDCPA").)

The Court first considers whether Nationstar is a debt collector as defined under the FDCPA and then considers whether Plaintiff states a claim against Davidson Fink.[6]

### i. Nationstar is not a debt collector

Plaintiff alleges that Nationstar failed to provide the requisite disclosure upon "initial communication," as required under 15 U.S.C. § 1692e(11), when it received the assigned Mortgage in July of 2013, (Compl. ¶¶ 11, 26), and that Defendants violated 15 U.S.C. § 1692g(b) by continuing to "collect the alleged debt without ceasing their collection actions" despite Plaintiff's request for proper verification and validation, (*id.* ¶¶ 15, 29).

To establish a violation under the FDCPA, "(1) the plaintiff must be a 'consumer' who

_____

("Because we conclude that the erroneously attached notice was not an initial communication, we need not confront the parties' extensive arguments regarding whether the initiation of a foreclosure action is done 'in connection with the collection of any debt.'"); *Boyd v. J.E. Robert Co., Inc.*, No. 05-CV-2455, 2012 WL 4718723, at *16 (E.D.N.Y. Oct. 2, 2012) ("The court finds that the foreclosure actions on liens against [the p]laintiffs' interests in their properties, . . . did not seek monetary judgments against debtor-property owners and consequently were not debt collection activities actionable under [sections] 1692e and 1692f [of the FDCPA]."), *aff'd on other grounds*, 765 F.3d 123, 126 n.3 (2d Cir. 2014) ("Because we resolve this appeal on the first ground — that the liens in question did not constitute debt — we do not address the District Court's conclusion that the FDCPA does not apply to enforcement of security interests against property."); *see also Derisme v. Hunt Leibart Jacobsen P.C.*, 880 F. Supp. 2d 311, 325 (D. Conn. 2015) ("[F]oreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA.").

Nevertheless, to the extent that Plaintiff alleges that the mere act of filing a foreclosure action, as opposed to conduct during litigation, constitutes "abusive" or "harassing" behavior proscribed by the FDCPA, (*see* Compl. ¶ 18), Plaintiff fails to state a claim under the FDCPA. *See Derisme*, 880 F. Supp. 2d at 328 ("Prosecuting a state foreclosure action is simply not the type of abusive collective practices that the FDCPA is aimed at eliminating." (citing *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95 (2d Cir. 2010))); *see also Simmons*, 622 F.3d at 95 (holding that filing a proof of claim in bankruptcy court "cannot constitute the sort of abusive debt collection practice proscribed by the FDCPA").

[6] Davidson Fink does not dispute that it is a debt collector as defined under the FDCPA.

allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. Sept. 23, 2015) (quoting *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014)); *see also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[The FDCPA] grants a private right of action to a consumer who receives a communication that violates the Act.").

"The relevant provisions of the FDCPA apply only to the activities of a 'debt collector,'" *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (citing 15 U.S.C. §§ 1692e, 1692f, 1692g), and "[a]s a general matter, creditors are not subject to the FDCPA," *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). The statute defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another." 15 U.S.C. § 1692a(6); *see Heintz v. Jenkins*, 514 U.S. 291, 293 (1995) ("The [FDCPA's] definition of the term debt collector includes a person who regularly collects or attempts to collect, directly or indirectly, debts owed to . . . another."). However, a "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii); *see Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 96 (2d Cir. 2012). Thus, "[u]nder the FDCPA, a 'debt collector' is defined as a person either (1) involved 'in any business the principal purpose of which is the collection of any debts,' or (2) 'who regularly collects . . .

debts owed . . . another.'" *Ciampa v. Law Offices of Igor Dodin, PLLC*, 978 F. Supp. 2d 174, 176 (E.D.N.Y. 2013) (quoting 15 U.S.C. § 1692a(6)).

The FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4); *see Vincent v. The Money Store*, 736 F. 3d 88, 98 (2d Cir. 2013). Although debt collectors are subject to the FDCPA, creditors generally are not, *Maguire*, 147 F.3d at 235, as the FDCPA "limits its reach to those collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own debts," *1077 Madison St. LLC v. March*, No. 14-CV-4253, 2015 WL 6455145, at *3 (E.D.N.Y. Oct. 26, 2015) (citing *Maguire*, 147 F.3d at 235). In addition, "[a] creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 255 (S.D.N.Y. 2008) (quoting *Doherty v. Citibank (S.D.) N.A.*, 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005)), *aff'd*, 360 F. App'x 255 (2d Cir. 2010). Where an entity is assigned "a debt in default solely for the purpose of facilitating collection of such debt for another," it falls outside the definition of a "creditor" under the FDCPA. *Id*. However, even where an entity acquires a defaulted debt, it is not a debt collector where it does not engage in collection activities or where it seeks to collect on its own behalf rather than "for another." *Henson v. Santander Consumer USA Inc.*, 582 U.S. ---, ---, 137 S. Ct. 1718, 1724 (June 12, 2017) (holding that "individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account" are not debt collectors); *see also Izmirligil v. Bank of N.Y. Mellon*, No. 11-CV-5591, 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) ("Plaintiff does not allege, nor does he argue in opposition that he can allege, that either BNYM's 'principal purpose' is the collection of debts or that BNYM 'regularly collects' debts owed another. Rather, plaintiff alleges that BNYM is a 'debt collector'

simply 'because [BNYM] took an assignment of the alleged debt while the debt was allegedly in default.'"); *Pereira v. Ocwen Loan Servicing*, LLC, No. 11-CV-2672, 2012 WL 1379340, at *3 (E.D.N.Y. Mar. 12, 2012) ("[I]f the note and mortgage were assigned to Ocwen, then [Ocwen] is not a debt collector as defined by the FDCPA unless the transfer of the debt in default was solely for the purpose of facilitating collection of the debt for another."), *report and recommendation adopted*, No. 11-CV-2672, 2012 WL 1381193 (E.D.N.Y. Apr. 18, 2012); *Burns*, 655 F. Supp. 2d at 254 (finding that the defendant was not a debt collector where "[t]he record show[ed] that [the defendant] 'sought to collect its own [$111,000.00] debt from [the] [p]laintiff' relating to the Minnesota Property; [the defendant] '[was] in the business of, among other things, financing mortgages for home buyers'; and its 'principal business [was] not debt collection'" (fourth and fifth alterations in original)).

Although the Complaint alleges that Nationstar received the debt by assignment on July 8, 2013, three months after Plaintiff defaulted on the Mortgage, (Compl. ¶ 10), it is also clear from the State Court Record and the underlying foreclosure proceeding that Nationstar sought to collect its own debt under the Mortgage, and not the debt of another.[7] (*See* State Court R. 2.) Consequently, Nationstar is not a "debt collector" under the FDCPA with respect to Plaintiff's

---

[7] Nationstar argues that it serviced Plaintiff's loan for three years before the Mortgage was assigned to it, and that Plaintiff was aware of this fact and communicated with Nationstar regarding the loan. (Nationstar Mem. 7.) To support its argument, Nationstar annexes a series of exhibits reflecting correspondence with Plaintiff. (*See id.* (citing Exhibits D–G).) As explained above, on a motion to dismiss pursuant to Rule 12(b)(6), the Court is limited to "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken," *Wilson*, 2016 WL 143454, at *1, as well as documents integral to the complaint, *L-7 Designs, Inc.*, 647 F.3d at 422. Contrary to Nationstar's assertion, there is no reason to believe Plaintiff "had knowledge and relied on" this correspondence in filing his Complaint. (Nationstar Mem. 8.) The Court declines to consider these exhibits.

loan and Mortgage.[8]  *See Henson*, 582 U.S. at ---, 137 S. Ct. at 1724 (holding that an entity that purchases a debt originated by someone else and seeks to collect on it is not a debt collector).

### ii.    Plaintiff does not state a claim against Davidson Fink

Section 1692g is entitled "Validation of debts" and requires a "debt collector" to furnish a written notice conveying certain information (the "validation notice") to a consumer debtor upon the debt collector's "initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a).  When an initial communication triggers the FDCPA's notice obligations, the debt collector must either include a validation notice in that communication or send a separate written notice to the debtor within the following five days, unless by that time the debtor has already paid the debt.  *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 224 (2d Cir. 2015) (citing 15 U.S.C. § 1692g(a)).  The required contents of the validation notice relate both to the particular debt and to the consumer's rights under the FDCPA: the notice must state the amount of the debt, the name of the creditor to whom the debt is owed, and must inform the consumer of her right to dispute the debt's validity.  *Id.*

After receiving a validation notice, the consumer has thirty days to mail a notice to the

---

[8]  In addition, Plaintiff fails to state a claim under section 1692e(11), which proscribes "[t]he failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11).  The Court understands Plaintiff to allege that Nationstar initiated a written communication with him when Nationstar was assigned the Mortgage.  (*See* State Court R. 51; Assignment of Mortgage, annexed to Compl. as Ex. A.)  However, for a written communication to fall within the ambit of the FDCPA, it must be directed to the consumer, and here, the Assignment of Mortgage was not.  *Carlin*, 852 F.3d at 214 ("[T]he statute specifies that the communication must be 'with' a consumer.").  Plaintiff alleges that he was not told of the assignment and discovered it at the "public recorder's office."  (Compl. ¶ 11.) Thus, Nationstar did not initiate communication with Plaintiff when it was assigned the Mortgage.

debt collector disputing the debt or requesting the name and address of the original creditor.

*Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010). If the consumer disputes the debt or requests the name and address of the original creditor within the thirty-day validation period, the debt collector must "cease collection of the debt, or any disputed portion thereof" until the debt collector verifies the debt or obtains the contact information of the original creditor and "a copy of such verification . . . or name and address of the original credit, is mailed to the consumer by the debt collector." *Id.* at 134–35 (quoting 15 U.S.C. § 1692g(b)).

Plaintiff alleges that Defendants never validated the debt and failed to "cease all collection activities" upon his September 1, 2015 "Notice of Dispute" pursuant to section 1692g(a). (Compl. ¶¶ 15–16.) However, Davidson Fink sent Plaintiff a validation notice in connection with the summons and complaint in the foreclosure action in 2013.[9] (*See* FDCPA Validation Notice, annexed to Compl. as Ex. B; State Court R. 14.) The validation notice explicitly notified Plaintiff that, under the FDCPA, he had thirty days within which to dispute the debt or request its verification. (*See* State Court R. 14.) In addition, the validation notice was attached to the complaint in the foreclosure action, which included a "Schedule C" that itemized the loan amount, mortgage origination date, principal balance owing and interest rate, default date and any late charges, (*id.* at 17), and which stated that the "plaintiff as named in the attached

---

[9] In the time since the parties submitted their briefing, the Second Circuit has held, in accordance with amendments to the FDCPA, that not only formal pleadings, but also "documents superfluously attached to a formal pleading . . . are not initial communications within the meaning of the FDCPA." *Carlin*, 852 F.3d at 213. Thus, Davidson Fink was not required to append a validation notice to its summons and complaint in the foreclosure action, *see id.*, and it is not clear from the Complaint whether Davidson Fink interacted with Plaintiff after filing the summons and complaint, except by serving filings in connection with the foreclosure action. To the extent that Plaintiff believes there was another "initial communication" that triggered a thirty-day validation period, the Court grants Plaintiff leave to amend the Complaint to assert a claim based on that initial communication.

summons and complaint is the creditor to whom the debt is owed," (*id.* at 14).  Plaintiff answered

the foreclosure complaint on November 4, 2013, (*id.* at 25–27), but did not seek to validate the

debt until September 1, 2015 — well after any thirty-day validation period had lapsed, (*see*

Notice of Dispute).  In addition, Plaintiff's validation notice made arguments that could and

should have been advanced before the state court on summary judgment.  (*See id.* ("Specifically,

I dispute as to the identity of the true owner (if any) of this alleged debt, the alleged amount due

and owing, I dispute all signatures appearing on [Nationstar's] documents, and [Nationstar's]

alleged authority and capacity to collect and or sue on behalf of the same.").)  Defendants

therefore did not violate section 1692g of the FDCPA by failing to validate Plaintiff's debt upon

request because they had already provided Plaintiff with all of the requisite information under the

FDCPA and because Plaintiff's opportunity for seeking validation had lapsed.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motions to dismiss. The Court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to file an amended complaint against Davidson Fink, to the extent that Plaintiff can allege that Davidson Fink violated the FDCPA in some manner separate from the pleadings of the state court foreclosure action. Should Plaintiff elect to file an amended complaint, the amended complaint must comply with Rule 8(a) of the Federal Rules of Civil Procedure, and it must "plead enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff is advised that the amended complaint will completely replace the original Complaint, must be captioned "Amended Complaint," and must bear the same docket number as this Memorandum and Order. If Plaintiff fails to file an amended complaint within the time allowed, the Court will enter judgment dismissing this action for the reasons set forth above.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: August 2, 2017
         Brooklyn, New York